United States District Court
Southern District of Texas

**ENTERED**

July 21, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| UPD GLOBAL RESOURCES, INC., | § | BANKRUPTCY NO. 11-36970-H5-11 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| UPD GLOBAL RESOURCES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. H-15-03073 |
| | § | |
| CONTINENTAL CASUALTY CO. | § | |
| and PBC SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| UPD GLOBAL RESOURCES, INC., | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2488 |
| | § | |
| CONTINENTAL CASUALTY CO. | § | |
| and PBC SERVICES, INC., | § | |
| | § | |
| Appellees. | § | |

| | | |
|---|---|---|
| UPD GLOBAL RESOURCES, INC., | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2717 |
| | § | |
| CONTINENTAL CASUALTY CO., | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses appeals brought by
UPD Global Resources, Inc. ("UPD" or "Debtor") from one order
entered in Bankruptcy Case No. H-11-36970-H5-11 and two orders

entered in related Adversary Proceeding No. H-15-03073. UPD's appeal of these orders has given rise to two civil actions: H-15-2488 and H-15-2717. Civil Action No. H-15-2488 concerns the appeal of two orders entered in Adversary Proceeding No. H-15-03073:

- Order granting Defendant's Motion to Dismiss, signed May 12, 2015, Docket Entry No. 27;

- Order on Motion for Clarification of the Order Granting Continental Casualty Company's Motion to Dismiss, signed August 13, 2015, Docket Entry No. 35.

Civil Action No. H-15-2717 concerns the appeal of the Bankruptcy Court's

- Order granting Motion of Continental Casualty Company ("Continental" or "Appellee") pursuant to Bankruptcy Rule 3006 to withdraw Claim No. 3, signed on September 17, 2015, Docket Entry No. 141 in Bankruptcy Case No. 11-36970-H5-11.

For the reasons explained below, these three orders of the Bankruptcy Court will be affirmed, and the two civil actions arising from UPD's appeal of these three orders will be dismissed.

## I.   Factual and Procedural Background

### A.   The Bankruptcy Case

UPD was the debtor in a Chapter 11 bankruptcy filed on August 15, 2011, Case No. H-11-36970-H5-11 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Court"). PBC Services, Inc. ("PBC") submitted a proof of claim for $5,670,543.77, representing the full value of a summary judgment received in the civil action

styled, <u>PBC Services, Inc. v. UPD Global Resources, Inc.</u>, No. 4:08-0235, in the United States District Court for the Southern District of Texas.[1]  On June 3, 2013, the Bankruptcy Court entered its Order (1) Regarding Final Approval of Disclosure Statement and (2) Confirming Fifth Amended Plan of Reorganization ("Confirmation Order").[2]  PBC and UPD initially disagreed as to PBC's Claim, but they ultimately agreed that PBC's Claim should be allowed in Class 4.[3]  Other allowed claims totaled approximately $11.6 million.[4]

In pertinent part the Fifth Amended Plan of Reorganization ("UPD's Plan") provides:

**V.**
**Means for Execution of the Plan**

After the Confirmation Date, Chief Restructuring Officer, Wayne Fuquay, shall be authorized to manage the

---

[1]UPD Global Resources, Inc.'s Fifth Amended Combined Plan of Reorganization and Disclosure Statement, Dated April 29, 2013, ¶ IV.D, Appellant's Bankruptcy Record on Appeal ("BROA in Civil Action No. H-15-2717"), Docket Entry No. 15-2, pp. 17-18 ("After an objection to the Proof of Claim and related court proceedings, PBC Services, Inc. has an allowed, general unsecured claim [] of $5,670,534.77.").  Page numbers contained in citations to the BROA refer to the page number in the upper, right-hand corner that is assigned by the court's ECF system.

[2]BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 76-90 and No. 15-3, pp. 43-57.

[3]<u>Id.</u> at ¶ I.9, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 79.  <u>See also</u> <u>id.</u> at ¶ II.1, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 86 ("The objections of . . . and PBC Services are WITHDRAWN.").

[4]Summary of General Unsecured Claims & Plan Proponent's Position on Allowance, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 38-40.

liquidation of the Estate under the terms set forth in the Plan.

The Plan provides for the liquidation of the Debtor's assets in order to pay its Creditors.  The Debtor-in-Possession proposes to implement this Plan by:

. . .

3.    Recovery of monies through a legal malpractice proceeding described more fully in Section [IX], *infra*.

. . .

## IX.
## Preservation of Retained Claims & Vesting of Assets

### A.    Vesting

This is a liquidating plan, and the Debtor has no plans to operate after Confirmation of the Plan.  Therefore, property of the Estate shall not vest in the Debtor upon Confirmation of the Plan.  From, and after the Effective Date, the Chief Restructuring Officer may settle and compromise Claims with continued supervision of the Bankruptcy Court. . .

### B.    Retention and Enforcement of Causes of Action

Except as otherwise provided in the Plan, all causes of action that the Debtor and the Estate may hold against any person or entity shall be retained by the Bankruptcy Estate and shall be prosecuted [by] the Chief Restructuring Officer, after the Effective Date.

In particular, the Debtor has a legal malpractice claim against Timothy W. Strickland and Fowler, Rodriguez, Valdes-Fauli, LLP related to their representation of the Debtor in the lawsuit, PBC Services, Inc. v. UPD Global Resources, Inc., No. 4:08-cv-00235, in the United States District Court for the Southern District of Texas.  On September 19, 2012, UPD commenced a legal malpractice action against the Defendants in UPD Global Resources, Inc. v. Fowler, Rodriguez, Valdes-Fauli, Flint, Gray, McCoy, Sullivan and Carroll, LLP f/k/a & a/k/a Fowler, Rodriguez, Valdes-Fuli f/k/a & a/k/a Fowler Rodriguez and

-4-

Timothy W. Strickland, Cause No. 2012-54817, in the 165th District Court of Harris County, Texas.[5]

. . .

## XV.
## Effect of Confirmation

**A.   Binding Effect**

The Plan shall be binding on all present and former holders of Claims and Interests in their respective successors and assigns.

**B.   Moratorium, Injunction, and Limitation of Recourse for Payment**

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against,

---

[5]This case was originally filed before confirmation of UPD's Plan as Cause No. 2012-54817 in the 165th District Court of Harris County, Texas.  See Plaintiff's Original Petition and Request for Disclosure, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 65-71.  Post-confirmation, the parties agreed to dismiss the lawsuit without prejudice upon the execution of an agreement to toll the statute of limitations.  Later, the case was refiled as Cause No. 2013-63621 in the 334th District Court of Harris County, Texas, but was transferred back to the 165th District Court.  See Debtor's Emergency Motion to Reconsider Order Allowing Withdraw of Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 105; Amended Motion for Summary Judgment of Timothy Strickland and Fowler Rodriguez, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 7 (filed in the 165th Judicial District of Harris County, Texas); Plaintiff UPD Global Resources, Inc.'s Response to Defendants Timothy Strickland and the Law Firm of Fowler Rodriguez' Motion for Summary Judgment and in the Alternative Motion for Stay, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, pp. 31 and 37-38 ¶ 19.  "In lieu of seeking an abatement, the parties in the legal malpractice [action] negotiated a second tolling agreement and UPD took a voluntary nonsuit of the legal malpractice case, with the right to refile the case depending on the outcome of [UPD's] appeal [of the Bankruptcy Court's grant of Continental's motion to withdraw claim]." Appellant's Brief, Docket Entry No. 17 in Civil Action No. H-15-2717, p. 10.  Page numbers contained in citations to the appellate briefs refer to the native page numbers at the bottom of the page.

or Interest in, the Debtor's Bankruptcy Estate or the Debtor will be permanently enjoined, on and after the Consummation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy Estate on account of any such claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan and Plan Documents.

. . .

### XVI.
### No Discharge

This is a liquidating plan, and the Debtor does not intend to engage in business operations after confirmation of the Plan. Therefore, there shall be no discharge granted in this case.[6]

**B.    UPD's Malpractice Action, UPD's Adversary Action, and Continental's Motion to Withdraw Proof of Claim in UPD's Bankruptcy Case**

Before confirmation of UPD's Plan, UPD commenced a legal malpractice case against the attorneys who represented UPD in the breach of contract suit that resulted in PBC's summary judgment and claim against UPD for $5,670,534.77.   The defendants in UPD's

---

[6]UPD Global Resources, Inc.'s Fifth Amended Combined Plan of Reorganization and Disclosure Statement, Dated April 29, 2013, BROA in Civil Action No. 15-2717, Docket Entry No. 15-2, pp. 19, 23-24, 29-30.

malpractice suit were insured under a policy issued by Continental.[7]

On January 24, 2015, PBC transferred and assigned to Continental all of its rights and advantages under the summary judgment received in the civil action styled, <u>PBC Services, Inc. v. UPD Global Resources, Inc.</u>, No. 4:08-00235, in the Southern District of Texas, and under PBC's general unsecured claim for $5,670,534.77 allowed in UPD's Bankruptcy Case.[8]

On January 27, 2015, PBC filed a notice of transfer in the Southern District of Texas, Civil Action No. 4:08-cv-00235, as required by § 12.014 of the Texas Property Code.[9]

---

[7]Amended Motion for Summary Judgment of Timothy Strickland and Fowler Rodriguez, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 10 ¶ 11. <u>See also</u> Debtor's Emergency Motion to Reconsider Order Allowing Withdrawal of Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 105 ("Continental is providing a defense for the defendant attorneys.").

[8]<u>See</u> Confirmation Order ¶ I.10.b, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 79. <u>See also</u> <u>id.</u> at 86 ¶ II.D ("Approval of the Agreement with the POHA and PBC Services"); Response to Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), Appellant's Bankruptcy Record on Appeal in Civil Action No. H-15-2488 ("BROA in Civil Action No. H-15-2488"), Docket Entry No. 2-2, p. 93 (acknowledging that PBC's claim was an allowed, general unsecured claim).

[9]PBC's Notice of Transfer, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 98-99, and Docket Entry No. 15-3, pp. 23-24.

On January 28, 2015, PBC filed a notice of transfer in UPD's Bankruptcy Case, as required by Federal Rule of Bankruptcy Procedure 3001(e)(2).[10]

On February 9, 2015, Continental filed its first motion to withdraw claim in UPD's Bankruptcy Case,[11] which the Bankruptcy Court granted the next day.[12]  The following day UPD filed a motion urging the Bankruptcy Court to reconsider its order granting Continental's motion to withdraw.[13]

On February 16, 2015, Continental, as transferee and assignee of PBC, filed a Satisfaction of Judgment in PBC Services, Inc. v. UPD Global Resources, Inc., No. 4:08-00235, as required by Federal Rule of Civil Procedure 60(b)(5), and § 52.005 of the Texas Property Code.  The Satisfaction of Judgment stated that the final judgment entered by the District Court on November 30, 2010, in favor of PBC against UPD, awarding compensatory damages plus reasonable attorneys' fees and interest, "is satisfied in full."[14]

---

[10]Notice of Transfer of Claim Other Than for Security, BROA in Civil Action No. H-15-2717, Docket Entry Nos. 15-2, p. 96, and 15-3, p. 26.

[11]Motion of Continental Casualty Company Pursuant to Bankruptcy Rule 3006 to Withdraw Claim and Notice of Hearing, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 93-95.

[12]Order, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 102.

[13]Debtor's Emergency Motion to Reconsider Order Allowing Withdraw of Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 103-08.

[14]Satisfaction of Judgment, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 29.

On February 25, 2015, UPD filed Adversary Proceeding No. H-15-03073 against PBC and Continental seeking, _inter alia_, declaratory judgment that PBC and Continental (1) violated injunctions contained in UPD's Plan and (2) impermissibly interfered with implementation of UPD's Plan.[15]  On the same day the Bankruptcy Court held a hearing on Debtor's Emergency Motion to Reconsider Allowing Withdraw of Claim, and on March 10, 2015, the Bankruptcy Court signed an Order vacating its February 10, 2015, Order granting Continental's motion to withdraw claim and denying the motion subject to reconsideration at a hearing on UPD's application for a temporary restraining order or preliminary injunction.[16]

On March 4, 2015, UPD filed Plaintiff's First Amended Complaint in the Adversary Proceeding asserting claims for declaratory judgment that PBC and Continental violated injunctions contained in UPD's confirmed plan of reorganization, and impermissibly interfered with implementation of UPD's confirmed plan, along with claims for breach of contract, conspiracy, tortious interference with contract, post-confirmation equitable subordination, and preliminary and permanent injunctive relief.[17]

---

[15]Plaintiff's Original Complaint, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 1-11, esp. pp. 6-7 ¶ 18.

[16]Order, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 42.

[17]Plaintiff's First Amended Complaint, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 12-26.

On March 27, 2015, Continental filed a motion to dismiss, and memorandum in support thereof,[18] to which UPD responded on April 3, 2015.[19]  On April 20, 2015, the Bankruptcy Court held a hearing on Continental's motion to dismiss.[20]  On April 24, 2015, PBC filed a motion seeking to join Continental's motion to dismiss.[21]  On April 27, 2015, UPD submitted a post-hearing brief,[22] to which Continental responded on May 1, 2015.[23]  On May 12, 2015, the Bankruptcy Court signed the first of the three orders from which

---

[18]Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), and Continental Casualty Company's Memorandum of Law in Support of Its Motion to Dismiss, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 75-78, and 79-89, respectively.

[19]Response to Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 90-105.

[20]Transcript of Hearing Held on April 20, 2015, Appellant's BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 184-215.

[21]PBC Services, Inc.'s Motion to Join Continental Casualty Company's Motion to Dismiss and Arguments, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 167-72.

[22]Plaintiff's Post-Hearing Brief, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 174-83.

[23]Continental Casualty Company's Response to Plaintiff's Post-Hearing Brief, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-3, pp. 1-5.

UPD appeals, i.e., the Order dismissing the Adversary Proceeding which stated only: "Defendant's Motion to Dismiss is **GRANTED**."[24]

On May 29, 2015, the defendants in UPD's state court malpractice suit filed an amended motion for summary judgment arguing that in light of the Satisfaction of Judgment, which Continental filed in the Federal District Court, there were no damages and that absent damages, UPD's malpractice case could not be sustained.[25] UPD responded on July 20, 2015, arguing that while in personam damages against the debtor had been extinguished, in rem damages against the debtor's estate had not been extinguished.[26] On July 27, 2015, the state court denied the malpractice defendants' motion for summary judgment.[27]

On August 13, 2015, the Bankruptcy Court signed the second order from which UPD appeals, i.e., the Order clarifying and modifying the Order dismissing the Adversary Proceeding stating:

> THE ORDER (DK #27) IS HEREBY CLARIFIED that Continental Casualty Company's Motion to Dismiss is GRANTED pursuant

_____

[24]Order, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, p. 216.

[25]Amended Motion for Summary Judgment of Timothy Strickland and Fowler Rodriguez, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, pp. 7-13.

[26]Plaintiff UPD Global Resources, Inc.'s Response to Defendants Timothy Strickland and the Law Firm of Fowler Rodriguez' Motion for Summary Judgment and in the Alternative Motion for Stay, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 31-41, esp. pp. 36-39 ¶¶ 14-24.

[27]Order, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 58.

to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, thereby dismissing PBC Services, Inc. and the adversary suit in their entirety.[28]

On August 20, 2015, Continental filed a second motion to withdraw PBC's Claim from UPD's Bankruptcy Case,[29] to which UPD responded on September 10, 2015.[30]

On August 27, 2015, UPD timely filed a Notice of Appeal of the Bankruptcy Court's May 12, 2015, Order dismissing the Adversary Proceeding, and the August 13, 2015, Order clarifying and modifying the Order dismissing the Adversary Proceeding, thereby initiating Civil Action No. H-15-2488.

On September 17, 2015, the Bankruptcy Court granted Continental's motion to withdraw PBC's Claim, and entered the third order from which UPD appeals.   That Order stated:

> On this day, the Court held a hearing on the Motion of Continental Casualty Company (Docket No. 139) pursuant to Bankruptcy Rule 3006 to withdraw Claim No. 3.  The Court having reviewed the pleadings and considered arguments of counsel, grants this Motion.
>
> . . . Claim No. 3 is hereby deemed withdrawn.[31]

---

[28]Order, Appellant's BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, p. 231.

[29]Motion of Continental Casualty Company to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to Withdraw Claim and Notice of Hearing, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 136-46.

[30]Debtor's Response to Motion of Continental Casualty Company to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to Withdraw Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, pp. 1-59.

[31]Order, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, p. 147.

UPD filed a notice of appeal the same day thereby initiating Civil Action No. H-15-2717.[32]

On October 1, 2015, UPD filed a motion seeking leave to reopen the evidence in UPD's Bankruptcy Case to allow admission into the record of documents.[33]  "One such document was the *Agreement Between PBC and Continental Casualty Company regarding the purchase of the PBC claim*, which stated the Appellee's purpose for purchasing the claim.  (ECF No. 15-2, p. 129)."[34]  On October 14, 2015, Continental filed a response urging the Bankruptcy Court to deny UPD's motion as improper.[35]  Continental argued that

> [a]lthough the Debtor asserts that some of the additional documents and materials were previously identified on its original and amended exhibit lists regarding the Debtor's prior motion to reconsider, those proposed exhibits were not previously admitted and, even if they were admitted over Continental's objection, that was a different motion resulting in a different order which is not the subject of the Debtor's appeal.  As such, there is no basis for those documents and materials to be admitted for the purpose of being added to the record on appeal.[36]

--------

[32]Bankruptcy Docket Sheet, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-1, p. 18.

[33]Debtor's Motion for Rehearing and to Extend Time to File Designations Under Rule 8009, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 148-53.

[34]Appellant's Brief, Docket Entry No. 17 in Civil Action No. H-15-2717, p. 10.

[35]Continental Casualty Company's Response to Debtor's Motion for Rehearing and to Extend Time to File Designations Under Rule 8009, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2, pp. 154-57.

[36]Id. at 155 ¶ 9.

-13-

The Bankruptcy Court has not ruled on this motion,[37] and the referenced documents have not been considered for purposes of the two appeals now before the court.

## II.  **Appellate Jurisdiction and Standards of Review**

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court.  28 U.S.C. § 158(a). Because the district court functions as an appellate court, it applies the same standard of review that federal appellate courts use when reviewing district court decisions.  See Webb v. Reserve Life Insurance Co. (In re Webb), 954 F.2d 1102, 1103-04 (5th Cir. 1992).  This court thus reviews the Bankruptcy Court's findings of fact for clear error and its rulings on questions of law or mixed questions of law and fact de novo.  See Wooley v. Faulkner (In re SI Restructuring, Inc.), 542 F.3d 131, 135 (5th Cir. 2008).

## III.  **Appeal from Dismissal of the Adversary Proceeding**

UPD's appeal in Civil Action No. 15-2488 of the Bankruptcy Court's dismissal of Adversary Proceeding No. H-15-03073 raises three issues:

> (1) Whether the Bankruptcy Court erred in dismissing Plaintiff's First Amended Complaint for failure to state a claim for which relief could be granted pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6).

---

[37]Appellant's Brief, Docket Entry No. 17 in Civil Action No. H-15-2717, p. 10.

. . .

> (2)   Whether the Bankruptcy Court erred in dismissing Plaintiff's First Amended Complaint without first giving the Plaintiff the opportunity to replead.

. . .

> (3)   Whether the Bankruptcy Court had post-confirmation jurisdiction over the subject matter of Plaintiff's First Amended Complaint.[38]

## A.   Standards of Review

The Bankrutpcy Court's decisions to dismiss the adversary case under Federal Rule of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction and/or Rule 12(b)(6) for failure to state a claim are legal decisions subject to de novo review. See U.S. Brass Corp. v. Travelers Insurance Group (In re U.S. Brass Corp.), 301 F.3d 296, 303 (5th Cir. 2002) ("'Both the bankruptcy and district courts' finding that they had subject matter jurisdiction is a legal determination that we review de novo.'"). See also Carroll v. Fort James Corp., 470 F.3d 1171, 1173 (5th Cir. 2006) (bankruptcy court's grant of Rule 12(b)(6) motion to dismiss is reviewed de novo). A bankrutpcy court's denial of a motion for leave to amend is reviewed for abuse of discretion. Waldron v. Adams & Reese, L.L.P. (In re American International Refinery, Inc.), 676 F.3d 455, 461, 466 (5th Cir. 2012).

---

[38]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 3.

B.    **Analysis**

    1.    <u>The Bankruptcy Court Lacked Post-Confirmation Subject</u>
<u>Matter Jurisdiction Over the Adversary Proceeding</u>

UPD argues that the Bankruptcy Court had post-confirmation subject matter jurisdiction over the claims that it asserted in the Adversary Proceeding because those claims are rooted in acts that interfered with the implementation of UPD's confirmed Plan.[39]  UPD argues that the Bankruptcy Court had subject matter jurisdiction because the claims asserted in the Adversary Proceeding concern

> conduct calculated to thwart UPD's implementation of its
> plan of reorganization when [Continental's] predecessor
> in interest endorsed the prosecution of a legal
> malpractice suit as a means of implementing its plan.
> This endorsement came after UPD and PBC Services
> litigated the amount and classification of PBC's claim
> prior to confirmation.[40]

    (a)   Applicable Law

        **(1)   Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.  "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"  <u>Home Builders Association of Mississippi, Inc. v. City of</u> <u>Madison, Mississippi</u>, 143 F.3d 1006, 1010 (5th Cir. 1998).  "Courts

---

[39]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 24.

[40]<u>Id.</u> at 27-28.

-16-

may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986).

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact — irrespective of the pleadings — and matters outside the pleadings are considered. Id. Because both parties to this action cite evidence outside UPD's pleadings in support of their arguments for and against Continental's Rule 12(b)(1) motion to dismiss, i.e., UPD's confirmed Plan and pleadings from the malpractice suit that UPD is pursuing in state court against the attorneys who represented UPD in the breach of contract suit that resulted in a $5,670,534.77 judgment and allowed claim in UPD's Bankruptcy Case, Continental's motion to dismiss constitutes a factual attack on the Bankruptcy Court's jurisdiction, and the Bankruptcy Court's review was not limited to whether the first amended complaint filed in the

Adversary Proceeding sufficiently alleged jurisdiction.[41]  UPD, as
the party asserting federal jurisdiction, has the burden of showing
that the jurisdictional requirements have been met.  Id.  See also
Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484,
487 (5th Cir. 2014).  When facing a subject matter jurisdiction
challenge and other challenges on the merits, e.g., Continental's
Rule 12(b)(6) challenge, courts must consider the Rule 12(b)(1)
jurisdictional challenge before addressing other challenges on the
merits.  Id.

### (2)   Bankruptcy Jurisdiction

Bankruptcy jurisdiction is governed by 28 U.S.C. §§ 157(c)(1)
and 1334(b) regardless of whether the matter at issue arises before
or after confirmation of a plan.  Section 157(c)(1) provides:  "A
bankruptcy judge may hear a proceeding that is not a core
proceeding but that is otherwise related to a case under title 11."
Under 28 U.S.C. § 1334(b) federal district courts have original but
not exclusive jurisdiction of all civil proceedings arising under
or arising in or related to cases under title 11.  "Proceedings
'related to' a bankruptcy include (1) causes of action owned by the
debtor that become property of the estate pursuant to 11 U.S.C.
§ 541, and (2) suits between third parties that have an effect on
the bankruptcy estate."  In re Rapid-Torc, Inc., Bankruptcy Action

---

[41]The underlying facts stated in § I, above, are not disputed.

No. 12-39217-H5-11, 2014 WL 7410578, *2 n.5 (Bankr. S.D. Tex. December 31, 2014). Nevertheless, in In re Craig's Stores of Texas, Inc., 266 F.3d 388, 390 (5th Cir. 2001), the Fifth Circuit held that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." See also In re U.S. Brass Corp., 301 F.3d at 305 n.29 ("Although . . . our holding in Craig's Stores confirms [] that post-confirmation jurisdiction exists for disputes concerning the implementation or execution of a confirmed plan, 28 U.S.C. § 1334 remains the source of this jurisdiction."). In In re U.S. Brass Corp., 301 F.3d at 305, the Fifth Circuit held that post-confirmation jurisdiction existed over a dispute between the debtor's suppliers and the debtor's insurance company upon concluding that "the proceeding will certainly impact compliance with or completion of the reorganization plan."

In In re Enron Corp. Securities, 535 F.3d 325, 335 (5th Cir. 2008), the Fifth Circuit identified three factors as critical to the holding in Craig's Stores that post-confirmation bankrutpcy jurisdiction did not exist because the matters at issue did not pertain to the implementation or execution of the confirmed plan. First, the claims at issue "principally dealt with post-confirmation relations between the parties." Id. Second, "[t]here was no antagonism or claim pending between the parties as

of the date of the reorganization." Id.  And third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." Id.  Applying these three factors to the facts at issue in the Enron case, the Fifth Circuit held that post-confirmation jurisdiction existed because the dispute at issue involved pre-confirmation events and arose pre-confirmation.  Since these two factors weighed heavily in favor of federal jurisdiction, the Fifth Circuit did not address the third Craig's Stores factor, i.e., whether facts or law deriving from the reorganization plan were necessary to resolve the claims.

(b)  Application of the Law to the Facts

The parties have argued both to the Bankruptcy Court and to this court that the question of whether the Bankruptcy Court had post-confirmation subject matter jurisdiction over the Adversary Proceeding that UPD filed against Continental and PBC is governed by the three factors that the Fifth Circuit articulated in In re Enron, 535 F.3d at 335.[42]  Applying these three factors to the

_____

[42]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, pp. 25-27; and Appellee Continental Casualty Company's Brief, Docket Entry No. 8 in Civil Action No. H-15-2488, pp. 7-14.  See also Continental Casualty Company's Memorandum of Law in Support of Its Motion to Dismiss, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 82-84; Response to Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 97-98.

undisputed facts of this case, the court concludes that the
Bankruptcy Court correctly determined that it lacked subject matter
jurisdiction over the Adversary Proceeding.

### (1)   The Claims at Issue Principally Concern Post-Confirmation Relations Between the Parties

The first factor is whether the claims principally dealt with
pre- or post-confirmation relations between the parties.   In re
Enron, 535 F.3d at 335 (citing Craig's Stores, 266 F.3d at 391).
The claims at issue are the claims asserted in the First Amended
Complaint that UPD filed in the Adversary Proceeding, i.e., claims
for breach of contract, conspiracy, tortious interference with an
existing contract, post-confirmation equitable subordination,
declaratory judgment, and requests for injunctive relief, arising
from UPD's allegations that Continental interfered with the
implementation of UPD's confirmed Plan when it purchased PBC's
judgment against UPD and PBC's allowed claim in UPD's Bankruptcy
Case, and subsequently filed a Satisfaction of Judgment in the
federal district court from which the judgment issued, and a motion
to withdraw PBC's allowed claim in UPD's Bankruptcy Case.   The
Bankruptcy Court confirmed UPD's Plan on June 3, 2013.[43]  The claims
asserted by UPD in the First Amended Complaint filed in the
Adversary Proceeding are all based on post-confirmation actions,

---

[43]BROA in Civil Action No. H-15-2717, Docket Entry No. 15-2,
pp. 76-90 and 15-3, pp. 43-57.

i.e., PBC's sale of its judgment against UPD and its allowed claim in UPD's Bankruptcy Case to Continental on January 24, 2015; Continental's filing of the Satisfaction of Judgment in the federal district court on February 16, 2015; and Continental's filing of the motions to withdraw PBC's allowed claim in UPD's Bankruptcy Case first on February 9, 2015, and again on August 20, 2015.

UPD does not dispute that the acts alleged in the First Amended Complaint as interfering with implementation of UPD's confirmed Plan occurred post-confirmation. Nevertheless, UPD argues that the first <u>Enron</u> factor weighs in favor of post-confirmation Bankruptcy Court jurisdiction because

> [w]hen Continental purchased PBC's allowed, general unsecured claim, Continental stepped into the shoes of PBC, a creditor who was actively litigating bankruptcy matters with UPD prior to confirmation. Moreover, the malpractice claim was originally filed prior to confirmation, and there is no reason to believe that Continental was not then financing the defense for UPD's former counsel.[44]

Missing from UPD's briefing however is a cite to any authority supporting its contention that when Continental purchased PBC's allowed claim, Continental violated any provision of UPD's confirmed Plan or assumed from PBC any obligation that prohibited it from taking the actions about which UPD complains, i.e., filing a Satisfaction of Judgment in federal district court and filing motions to withdraw PBC's allowed claim in UPD's Bankruptcy Case.

---

[44]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 26.

When UPD argued this point to the Bankruptcy Court at the April 20, 2015, hearing for Continental's motion to dismiss the Bankruptcy Court asked UPD for authority supporting its contention that Continental's purchase of PBC's judgment and allowed claim meant that Continental assumed some sort of successor liability.   When UPD's counsel was unable to cite any authority for the contention that Continental assumed any successor liability, the Bankruptcy Court accorded UPD an opportunity to address the issue of Continental successor liability in a post-hearing brief.[45]   On April 27, 2015, UPD filed a post-hearing brief in which it stated:

> In further response to the Court's question regarding "successor liability," traditional notions of successor liability, which predominately concerns the liability of a successor entity which acquires the assets of a predecessor corporation has for the predecessor's general liabilities, is not applicable to this case.   Rather, under bankruptcy law, Continental has those rights and obligations that PBC had prior to the post-confirmation assignment of its allowed claim.   Likewise, under state law, the circumstances of this case show that Continental impliedly assumed PBC's duties and obligations created under the confirmed plan of reorganization.   Therefore, the Court has jurisdiction over the subject matter of the causes of action raised in UPD's First Amended Complaint, and the Court should not grant Defendant's Motion to Dismiss.[46]

Missing from PBC's briefing is any argument or authority from which the Bankruptcy Court — or this court — could conclude that

---

[45]Transcript of Hearing Held on April 20, 2015, pp. 18:14-19:17, 22:18-23:2, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 201-02, 205-06.

[46]Plaintiff's Post-Hearing Brief, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 174-75.

UPD's confirmed Plan either prohibited PBC from selling its claim to Continental or prohibited PBC or Continental from filing the Satisfaction of Judgment in the Federal District Court or the motions to withdraw PBC's allowed claim from UPD's Bankruptcy Case. Because all of the claims asserted in the Adversary Proceeding arise from actions that occurred post-confirmation, and because all of those actions concern post-confirmation relations between PBC and Continental and the alleged post-confirmation effect that those actions and relations had on UPD's state court malpractice suit, the court concludes that the claims asserted in the Adversary Proceeding principally concern post-confirmation relations between the parties, and that the first <u>Enron</u> factor weighs against the existence of post-confirmation Bankruptcy Court jurisdiction.

> **(2)    There Was No Antagonism or Claim Pending Between the Parties as of the Date of the Reorganization**

The second factor is whether "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization." <u>In re Enron</u>, 535 F.3d at 335 (citing <u>Craig's Stores</u>, 266 F.3d at 391). UPD argues that this factor "is . . . satisfied. . . [because a]fter all, PBC had filed an objection to confirmation of UPD's plan of reorganization!"[47] While PBC objected to confirmation of UPD's plan of reorganization, PBC's objection

---

[47]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 26.

was resolved by UPD and PBC before the Plan's confirmation.[48]
Therefore, there was no antagonism and there were no claims pending
between UPD and PBC as of the date of reorganization. Moreover,
even if there were antagonism or claims pending between UPD and PBC
as of the date of the reorganization, UPD has failed to make any
showing that any such pre-confirmation antagonism with PBC could be
imputed to Continental. Instead, UPD acknowledged to the Bank-
ruptcy Court that "traditional notions of successor liability . . .
[are] not applicable to this case."[49] Nor has UPD made any showing
that there was any pre-confirmation antagonism between UPD and
Continental.[50] Because UPD has failed to cite any evidence or
authority from which the court could conclude that there was
antagonism or that there were claims pending between the parties,
i.e., between UPD and Continental, as of the date of the
reorganization, the court concludes that the second Enron factor

---

[48]BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2,
pp. 16, 91, 97. See also, Transcript of Hearing Held on April 20,
2015, p. 16:14-16 (Counsel for UPD acknowledges: "Ultimately, an
agreement was reached, you know, between the parties where PBC's
claim was allowed in full. We agreed on what class they would fall
into."), BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2,
p. 199.

[49]Plaintiff's Post-Hearing Brief, BROA in Civil Action
No. H-15-2488, Docket Entry No. 2-2, pp. 174-75.

[50]See Transcript of Hearing Held on April 20, 2015, p. 17:3-8
(Counsel for UPD acknowledges: "[A]s far as Continental Insurance
Company goes, of course, we had — UPD had no claim against
Continental. We didn't know that they would be defending Fowler
Rodriguez in the malpractice case. But again, Continental stepped
into PBC's shoes when they acquired that claim."), BROA in Civil
Action No. H-15-2488, Docket Entry No. 2-2, p. 200.

weighs against the existence of post-confirmation Bankruptcy Court jurisdiction.

### (3) No Facts or Law Deriving from UPD's Confirmed Plan Were Necessary to the Claims Asserted

The third factor is whether "no facts or law deriving from the reorganization or the plan are necessary to the claim." In re Enron, 535 F.3d at 335 (citing Craig's Stores, 266 F.3d at 391). UPD argues:

> [T]he [c]ourt can only decide this issue in favor of UPD . . . [because t]he ability to prosecute a legal malpractice claim is one of two means of implementing UPD's plan. For a creditor to release a judgment and prevent such a prosecution frustrates this fundamental purpose of the Plan.[51]

> Continental responds that

> UPD's only argument regarding the third factor is that the malpractice lawsuit against UPD's former attorneys was one of the means for implementing UPD's plan of reorganization, and Continental and PBC allegedly interfered with the implementation of the Plan by allegedly preventing UPD from prosecuting its legal malpractice action. The allegations of the Amended Complaint show this is not true because UPD was able to file and prosecute the lawsuit but ultimately is unable to prove liability or damages against Continental's insureds. Continental did not prevent UPD from filing or prosecuting its legal malpractice lawsuit, but Continental did provide a defense for its insureds in the malpractice lawsuit. The Plan did not enjoin Continental from providing a defense for its insureds, nor could it have. The Plan also did not enjoin creditors such as PBC from transferring their underlying judgments or claims to third parties, nor could it have since judgments and claims are freely transferable. The actions taken by Continental to obtain PBC's judgment against UPD and file a notice of satisfaction were lawful, and such actions

---

[51]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 27.

Case 4:15-cv-02717   Document 20   Filed in TXSD on 07/21/16   Page 27 of 59

were not prohibited by UPD's Plan.  UPD made the unsubstantiated and conclusory allegation in its Amended Complaint that UPD interfered with the implementation of the Plan, but the Bankruptcy Court correctly determined that baseless allegations do not create jurisdiction in the Bankruptcy Court.[52]

UPD argues that Continental's purchase of the PBC claim and release of the PBC judgment against UPD frustrated a fundamental purpose of the confirmed Plan by preventing prosecution of UPD's malpractice suit in state court.   While prosecution of UPD's malpractice suit is recognized in UPD's confirmed Plan as a means of implementing that Plan, missing from UPD's briefing to both the Bankruptcy Court and to this court is a citation to any Plan provision or bankruptcy law that prohibits the actions about which UPD complains, i.e., PBC's sale to Continental of its judgment against UPD and the claim filed in UPD's Bankrutpcy Case, Continental's filing of a Satisfaction of Judgment in the federal district court, or Continental's filing of motions to withdraw the PBC claim from UPD's Bankrutpcy Case.  Moreover, at the April 20, 2015, hearing held by the Bankruptcy Court UPD's counsel acknowledged that

> no one act between PBC and Continental was unlawful.  You know, Continental validly purchased a claim.  Again, that's not an issue.
>
> But the ultimate unlawful purpose was to seek the release of the judgment in the district court and to use that as the basis of saying that, no, there is no underlying malpractice claim at all, because there is no judgment.

---

[52]Appellee's Brief, Docket Entry No. 8 in Civil Action No. H-15-2488, p. 12.

-27-

So, nothing, you know, between — nothing in the contact between PBC and Continental was unlawful, but it was the means of what they did.   In fact, in our response, we quoted the text of their written contract and exactly what the purpose was. . . .[53]

UPD's counsel also acknowledged that the actions about which it complains were not unlawful under Texas law:

THE COURT:   And how is that unlawful under Texas law to release and refuse to prosecute your own claim that you purchased?

MR. HADDOCK:   Well, probably under Texas law it's probably okay.   It would be — it's an ingenuous way to defend a case, I would say.   However, under federal law, it is unlawful.   This plan of reorganization that the Court approved governs the relationship between the debt -- the reorganized debtor and the creditors.   And also, it imposes upon the reorganized debtor certain things that it must do in order to perform the plan, one of those is that malpractice suit.

So — so, by doing this, they haven't violated state law but they are violating the orders of this court, and that is unlawful to violate a bankruptcy court order.[54]

---

[53]Transcript of Hearing Held on April 20, 2015, p. 21:8-20, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, p. 204. Although the text of the written contract between PBC and Continental was not quoted in the response that UPD filed to Continental's motion to dismiss, see Response to Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 90-140, UPD did quote the text of the PBC-Continental contract in the Debtor's Response to Motion of Continental Casualty Company to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to Withdraw Claim.   See BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 3 (citing ¶¶ 5.1-5.4 stating Continental's intent to file notices of transfer and satisfaction of judgment in the underlying suits.

[54]Id. at 21:24-22:12, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 204-05.

UPD's counsel also acknowledged that PBC was not barred either from selling its judgment and allowed claim, or from withdrawing its allowed claim in UPD's Bankruptcy Case:

> Again, this is not the instance where someone just bought and sold a claim. The result of this was that Continental was able to file a release of judgment and argue in state court — and give them a basis for arguing in state court that there is no malpractice claim, because there is no judgment that ever harmed UPD, which was one of the reasons why UPD probably came to bankruptcy court, because they had a judgment against them.
>
> And I want to emphasize it's not the assignment of the claim; it's not the withdrawal of the claim that's at issue here. It is the release of the judgment in the U. S. District Court.
>
> I mean, for instance, if Continental was a total stranger to this case and PBC decided, for whatever reason, that it wanted to withdraw the claim and not participate in any distribution under the plan, maybe it would be for a tax reason or something like that, that would be PBC's right to withdraw a claim. But here, the motives behind this — behind withdrawing the claim was to release a judgment that was the foundation for a legal malpractice claim.
>
> It doesn't go — and this doesn't even go toward the merits of the malpractice case. It's certainly possible that but for the withdrawal or the release of the judgment, it's certainly possible that UPD could lose the malpractice suit. Anything could happen in a trial. But this is a deliberate, you know, sabotage of a judg[e] -— of a claim. It's — they have simply pulled the rug out from under UPD and their ability to implement their plan of reorganization.[55]

Although there is no dispute that UPD's confirmed Plan required UPD to prosecute its malpractice suit, UPD fails to cite

---

[55]Transcript of Hearing Held on April 20, 2015, pp. 17:12-18:13, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 200-01.

any evidence or authority from which either the Bankruptcy Court or this court could conclude that UPD's confirmed Plan or bankruptcy law prevented Continental from using all legal means available to defend its insured against UPD's malpractice suit or barred Continental from taking the actions about which UPD complains and from which the claims that UPD asserted in the Adversary Proceeding arise.   Instead, UPD appeals to equity by arguing that PBC was the only creditor that benefitted from Continental's actions:

> Even worse, when Continental paid $425,000 to PBC, the only creditor who benefitted from the transaction was PBC.   None of the other general unsecured creditors received any benefit.   Creditors should never be allowed to unilaterally rewrite confirmed plans of reorganization.[56]

> Continental counters that

> the reality is the only parties who would have benefitted from the suit, if the suit had been successful at all, would have been UPD's counsel in the legal malpractice suit, UPD's attorneys in the bankruptcy case, UPD's Chief Restructuring Officer, and other administrative claimants.   Little, if any, payment would have flowed through to general unsecured creditors.   On the other hand, Continental caused a large multi-million dollar judgment against UPD to be released and satisfied, and thus all of UPD's creditors are left in a better position if UPD raises any funds for its creditors.   Regardless, the Bankruptcy Court did not have subject matter jurisdiction over UPD's claims, and thus the equities involved do not have any relevance to the instant appeal.[57]

---

[56]Id. at 19:20-20:6, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 202-03.   See Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 27.

[57]Appellee's Brief, Docket Entry No. 8 in Civil Action No. H-15-2488, p. 13.

As the Bankruptcy Court observed at the April 20, 2015, hearing, there has to be a legal basis for any kind of equitable ruling; and neither the record before the Bankruptcy Court nor the record before this court supports a conclusion that the First Amended Complaint UPD filed in the Adversary Proceeding asserted equitable claims over which the Bankruptcy Court had post-confirmation jurisdiction.[58]  The court thus concludes that UPD has failed make any showing that facts or law deriving from UPD's confirmed Plan are necessary to the claims at issue.  Accordingly, the court concludes that the third Enron factor weighs against the existence of post-confirmation Bankruptcy Court jurisdiction.

    2.    <u>UPD's First Amended Complaint Failed to State a Claim for Which Relief Could Be Granted</u>

UPD argues that

> if the Bankruptcy Court did not have post-confirmation subject matter jurisdiction, it should not have also dismissed the case pursuant to Rule 12(b)(6).  In doing so, the Bankruptcy Court, has improperly made a final decision as to the merits of the case, which will likely be *res judicata* in any subsequent case.[59]

Continental responds that

> the dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction was correct and should be affirmed. Since the Bankruptcy court lacked subject matter jurisdiction over UPD's claims in the Amended Complaint,

---

[58]Transcript of Hearing Held on April 20, 2015, pp. 20:2-6, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, p. 203.

[59]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 28.

the Bankruptcy Court is never going to be an appropriate
forum for UPD to litigate the claims alleged in its
Amended Complaint. Any error, if any, resulting from the
Bankruptcy Court's consideration and decision on the
Rule 12(b)(6) motion is completely harmless, and UPD's
arguments to the contrary are unfounded and lack merit.[60]

The motion to dismiss that Continental filed in the Bankruptcy

Court sought dismissal

for lack of subject matter jurisdiction pursuant to
Rule 12(b)(1) of the Federal Rules of Civil Procedure
("Federal Rules"), or, **alternatively**, for failure to
state a cause of action upon which relief can be granted
pursuant to Rule 12(b)(6) of the Federal Rules, both made
applicable to this proceeding pursuant to Rule 7012 of
the Federal Rules of Bankruptcy Procedure.[61]

The Bankrutpcy Court's grant of Continental's motion to dismiss was

therefore based first and foremost on Rule 12(b)(1) for lack of

subject matter jurisdiction, and on Rule 12(b)(6) only in the

alternative, i.e., in the event that a higher court were to

conclude that the Bankruptcy Court did, in fact, have subject

matter jurisdiction.  For the reasons stated in § III.B.1, above,

the court has already concluded that the Bankruptcy Court correctly

concluded that it lacked subject matter jurisdiction over the

claims asserted in UPD's Adversary Proceeding.  In the alternative,

for the reasons stated below, the court concludes that the

Bankrutpcy Court correctly concluded that UPD's First Amended

---

[60]Appellees' Brief, Docket Entry No. 8 in Civil Action
No. H-15-2488, p. 17.

[61]BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2,
p. 75 (emphasis added).

-32-

Complaint filed in the Adversary Proceeding failed to state a claim for which relief could be granted.

(a)   Rule 12(b)(6) Standard

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 127 S. Ct. at 1965).  "Where a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).

(b)   Application of the Law to the Alleged Facts

UPD's First Amended Complaint filed in the Adversary Proceeding asserts claims for declaratory judgment that PBC and Continental (1) violated injunctions contained in UPD's confirmed plan of reorganization and (2) impermissibly interfered with UPD's implementation of its confirmed plan, and claims for breach of contract, conspiracy, tortious interference with contract, post-confirmation equitable subordination, and preliminary and permanent injunctions.[62]

**(1)   UPD Failed to State a Breach of Contract Claim**

UPD argues that

[i]ts claim for breach of contract arises out of the acts done by Continental to interfere with UPD's

---

[62]Plaintiff's First Amended Complaint, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 12-26, especially, p. 7 ¶ 17.

implementation of its confirmed plan of reorganization by seeking the withdrawal of a claim it purchased for an improper purpose. This claim is premised on the principle that "[a] Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts." <u>Miller v. United States</u>, 363 F.3d 999, 1004 (9th Cir. 2004).[63]

Under Texas law the essential elements of an action for breach of contract are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. <u>Mullins v. TestAmerica, Inc.</u>, 564 F.3d 386, 418 (5th Cir. 2009). UPD argues that it

alleged that PBC voted in favor of a plan of reorganization that would pay allowed, general unsecured claims through, among other means, proceeds realized from the prosecution of a legal malpractice suit. Paragraphs 11 and 12 of UPD's Amended Complaint discuss how UPD began implementing the Plan by bring[ing] suit, in state court, against *Fowler, Rodriguez, Valdes-Fauli, Flint, Gray, McCoy, Sullivan and Carroll, LLP and Timothy W. Strickland,* thus, UPD tendered performance. (ECF no. 2-2, p. 16). Paragraphs 12 through 16 of the Amended Complaint then described how Continental, while providing a defense in the state court litigation, purchased PBC's allowed claim for $425,000 so that it could unilaterally release the underlying judgment and then urge, in state court, how there could then be no legal malpractice claim as a matter of law. (ECF no. 2-2, pp. 16-17). UPD then pled that it was damaged in an amount in excess of the minimum jurisdiction of this Court and should also be awarded its reasonable and necessary attorneys' fees. (ECF no. 2-2, p. 19).[64]

---

[63]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, p. 18.

[64]<u>Id.</u> at 19.

The gist of UPD's argument is that although the acts of PBC and Continental about which UPD complains were not individually illegal or prohibited by UPD's confirmed Plan, PBC's and Continental's conduct was nevertheless illegal because that conduct was undertaken to accomplish the illegal purpose of interfering with implementation of UPD's confirmed Plan.[65]   UPD's contention that its allegations stated a claim for breach of contract are belied not only by the First Amended Complaint's failure to identify any provision or term of UPD's confirmed Plan that PBC's or Continental's alleged conduct violated, but also by UPD's failure to allege facts capable of establishing that Continental acquired or assumed any affirmative duties or successor liability from PBC when it acquired PBC's judgment against UPD and PBC's allowed claim in UPD's Bankruptcy Case.   Moreover, PBC was not only unable to cite any authority in support of its arguments during the April 20, 2015, hearing held by the Bankruptcy Court, but PBC subsequently acknowledged to the Bankruptcy Court that "traditional notions of successor liability . . . [are] not applicable to this case,"[66] the actions about which UPD complains do not violate Texas

---

[65]Transcript of Hearing Held on April 20, 2015, p. 21:8-20, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, p. 204 (acknowledging that no one act between PBC and Continental was unlawful).

[66]Plaintiff's Post-Hearing Brief, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 174-75.

law,[67] and that a grant of summary judgment to Continental's insured

in the state court malpractice suit would not harm UPD:

> If Continental's insured obtains a summary judgment on
> the basis that Continental is allowed to withdraw the
> claim it now owns in this case, such an act will not harm
> UPD per se.  Rather, it will slam the door on creditors
> such as Wells Fargo Bank and the Port of Houston.[68]

Because UPD has failed to allege facts capable of establishing

either that Continental or PBC breached any terms of UPD's

confirmed Plan, or that UPD sustained any damages as a result of

any such breach, the court concludes that UPD's First Amended

Complaint failed to state a claim for breach of contract.

### (2)   UPD Failed to State a Conspiracy Claim

UPD argues that its cause of action for conspiracy was

adequately pled.[69]  "Under Texas law, civil conspiracy is defined

as a combination of two or more persons to accomplish an unlawful

purpose or to accomplish a lawful purpose by unlawful means."  Banc

One Capital Partners Corp. v. Kneipper, 67 F.3d 1187, 1194 (5th

Cir. 1995).  "In order for liability to attach, 'there must be an

---

[67]Id. at 21:24-22:12, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 204-05.

[68]Debtor's Response to Motion of Continental Casualty Company to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to Withdraw Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 4.  See also § IV, below, affirming the Bankruptcy Court's grant of Continental's motion to withdraw PBC's allowed claim.

[69]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, pp. 20-21.

unlawful, overt act in furtherance of the conspiracy.'" <u>Id.</u>
(quoting <u>Massey v. Armco Steel Co.</u>, 652 S.W.2d 932, 934 (Tex.
1983)). The essential elements of an action for civil conspiracy
are that (1) two or more persons, (2) had an object to be
accomplished, (3) that there was a meeting of the minds on the
subject or course of action, (4) that there was one or more
unlawful acts, and (5) the plaintiff was damaged as a proximate
result thereof. <u>Id.</u>   <u>See also</u> <u>Massey</u>, 652 S.W.2d at 934. UPD
argues that the provisions of the confirmed Plan requiring it to
pursue malpractice claims against the counsel that represented it
in the suit that resulted in PBC's judgment against it establish

> all but the last two elements of conspiracy. As to the
> element of carrying out one or more unlawful acts, the
> Amended Complaint describes Continental's actions after
> being assigned PBC's claims. (ECF no. 2-2, pp. 16-18).
> It then describes the damages incurred and sought. (ECF
> no. 2-2, p. 19). Thus, UPD alleged facts sufficient to
> show that the right to relief is plausible and above mere
> speculation.[70]

For essentially the same reasons that the court has concluded
UPD's First Amended Complaint failed to state a claim for breach of
contract, <u>i.e.</u>, because UPD acknowledged to the Bankruptcy Court
that "traditional notions of successor liability . . . [are] not
applicable to this case,"[71] that the actions about which UPD
complained were not unlawful under Texas law,[72] and that a grant of

---

[70]<u>Id.</u> at 21.

[71]Plaintiff's Post-Hearing Brief, BROA in Civil Action
No. H-15-2488, Docket Entry No. 2-2, pp. 174-75.

[72]<u>Id.</u> at 21:24-22:12, BROA in Civil Action No. H-15-2488,
Docket Entry No. 2-2, pp. 204-05.

summary judgment to Continental's insured in the state court malpractice suit would not harm UPD,[73] the court concludes that UPD failed to allege facts capable of establishing that Continental and/or PBC carried out one or more unlawful acts, or that UPD sustained any damages as a result of any such acts. Accordingly, the court concludes that UPD's First Amended Complaint failed to state a claim for civil conspiracy.

### (3) UPD Failed to State a Claim for Tortious Interference with an Existing Contract

UPD argues that its cause of action for tortious interference with an existing contract was adequately pled.[74] Under Texas law the essential elements of a claim for tortious interference with contract are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) that caused actual damages or loss. Homoki v. Conversion Services, Inc., 717 F.3d 388, 396 (5th Cir. 2013); Butnaru v. Ford Motor Co., 84 S.W.3d 198, 207 (Tex. 2002). Asserting that UPD's confirmed Plan is essentially a contract between the debtor and its creditors, UPD argues that

---

[73]Debtor's Response to Motion of Continental Casualty Company to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to Withdraw Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 4. See also § IV, below, affirming Bankruptcy Court's grant of Continental's motion to withdraw PBC's claim.

[74]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, pp. 21-23.

Continental, as assignee of PBC's rights and obligations under the "contract," devised a plan to tortiously interfere with the implementation of UPD's plan of reorganization, which it did through its purchase of PBC's claim in the amount of $425,000.  The Amended Complaint pleads facts how Continental then released the judgment it acquired for the purpose of seeking a summary judgment in state court that there is, somehow, no malpractice claim.  Moreover, this scheme allowed a single creditor — PBC — to obtain payment on its allowed claim to the prejudice of other, similarly situated, general unsecured creditors.  UPD then pled how this caused and entitled UPD to an award of exemplary damages.[75]

For essentially the same reasons that the court has concluded UPD's First Amended Complaint failed to state claims for breach of contract or civil conspiracy, i.e., because UPD acknowledged to the Bankruptcy Court that "traditional notions of successor liability . . . [are] not applicable to this case,"[76] that the actions about which UPD complained were not unlawful under Texas law,[77] and that a grant of summary judgment to Continental's insured in the state court malpractice suit would not harm UPD,[78] the court concludes that UPD failed to allege facts capable of establishing that Continental and/or PBC engaged in any acts that violated any terms

---

[75]Id. at 22.

[76]Plaintiff's Post-Hearing Brief, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 174-75.

[77]Id. at 21:24-22:12, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 204-05.

[78]Debtor's Response to Motion of Continental Casualty Company to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to Withdraw Claim, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 4.  See also § IV, below, affirming Bankruptcy Court's grant of Continental's motion to withdraw PBC's claim.

of UPD's confirmed Plan, interfered with UPD's implementation of that Plan, of caused UPD to suffer any actual damages or loss. Thus, the court concludes that UPD's First Amended Complaint failed to state a claim for tortious interference with an existing contract.

### (4) UPD Failed to State a Post-Confirmation Claim for Equitable Subordination

UPD argues that its cause of action for post-confirmation equitable subordination was adequately pled based on the facts stated in ¶¶ 14-18 and 32 of its First Amended Complaint.[79] Equitable subordination is a creature of bankruptcy law and is allowed when (1) a defendant-claimant engaged in some type of inequitable conduct (2) that resulted in injury to creditors of the debtor or conferred an unfair advantage on the defendant-claimant, and (3) bestowing the remedy of equitable subordination is not inconsistent with bankruptcy law. Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 699-700 (5th Cir. 1977) (establishing the three-part test, and cited with approval in United States v. Noland, 116 S. Ct. 1524, 1526 (1996)). UPD argues that its First Amended Complaint alleged facts capable of establishing that Continental's conduct was not only inequitable but also tortious and unlawful. However, for essentially the same reasons that the court has already concluded that UPD failed to

_____

[79]Appellant's Brief, Docket Entry No. 5 in Civil Action No. H-15-2488, pp. 23-24 (citing BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 14-18, 21-22).

state claims for breach of contract, civil conspiracy, or tortious interference with existing contract, the court concludes that UPD failed to allege facts capable of establishing that Continental engaged in inequitable conduct. Moreover, UPD acknowledges that "[t]he only bar to UPD being able to seek such relief would be if the Bankruptcy Court truly did not have post-confirmation subject matter jurisdiction as this is not a cause of action that is appropriate for other courts to try."[80]   Since for the reasons stated in § III.B.1, above, the court has already concluded that the Bankruptcy Court lacked post-confirmation subject matter jurisdiction over the claims asserted in the Adversary Proceeding, the court concludes that UPD failed to state a claim for equitable subordination.

### (5) UPD Failed to State a Claim for Declaratory Judgment

UPD argues that its claim for declaratory judgment was properly pled because the Bankruptcy Court was asked to determine whether:

1. The actions taken by Continental violated the injunctions contained in UPD's confirmed plan or reorganization and the Order confirming the same; and

2. The actions taken by Continental impermissibly interfere[] with UPD's implementation of its confirmed plan or reorganization.[81]

---

[80]<u>Id.</u> at 23-24.

[81]<u>Id.</u> at 24.

-42-

As for its equitable subordination claim, however, UPD acknowledges that "the only bar to UPD being able to seek declaratory relief would be if the Bankruptcy Court truly did not have post-confirmation subject matter jurisdiction as this is not a cause of action that is appropriate for other courts to try."[82]  Since for the reasons stated in § III.B.1, above, the court has already concluded that the Bankruptcy Court lacked post-confirmation subject matter jurisdiction over the claims asserted in UPD's First Amended Complaint, the court concludes that UPD failed to state a claim for declaratory judgment.

    3.   <u>The Bankruptcy Court Did Not Abuse Its Discretion by Dismissing the Adversary Case Without Granting Appellant's Request to Amend</u>

At the end of its response in opposition to Continental's motion to dismiss UPD stated:  "[I]f the court determines that plaintiff has failed to state a claim, UPD respectfully requests that the Court grant leave to amend the complaint."[83]  At the end of the hearing held on Continental's motion to dismiss, UPD reurged its request for leave to amend by stating, "[I]f the Court thinks that any part of this pleading is factually defective, we would,

---

[82]<u>Id.</u>

[83]Response to Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), pp. 15-16, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 104-105.

you know, respectively, ask for leave to, you know, allow us to amend it and make it very clear exactly, you know, what those facts are."[84]  UPD argues that the Bankruptcy Court erred by dismissing the Adversary Proceeding without first giving it the opportunity to replead.[85]  Continental argues that UPD's request for leave to amend was appropriately denied because the Bankruptcy Court lacked subject matter jurisdiction.[86]

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires."  "Although Rule 15[(a)] 'evinces a bias in favor of granting leave to amend,' it is not automatic."  Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996), cert. denied sub nom Schulte Roth & Zabel v. Southmark, Corp., 117 S. Ct. 686 (1997) (quoting Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981), and Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993)).  "A decision to grant leave is within the discretion of the trial court."  Id.  The Fifth Circuit has held that in exercising its discretion, a court may consider undue delay, bad faith, dilatory motive, undue prejudice to the opposing

---

[84]Transcript of Hearing Held April 20, 2015, p. 24, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, p. 207.

[85]Appellant's Brief, p. 5, Docket Entry No. 5 in Civil Action No. 15-2488, p. 20.

[86]Appellee Continental Casualty Company's Brief, pp. 20-21, Docket Entry No. 8 in Civil Action No. 15-2488, pp. 25-26.

party, and futility of the proposed amendment.  See Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003) (citing Foman v. Davis, 83 S. Ct. 227, 230 (1962)).  See also United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010) ("Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment.").  Moreover, if a complaint alleges the plaintiff's best case, there is no need for further amendment.  See Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam) (dismissing plaintiff's action because court could perceive of no viable claim plaintiff could include in an amended complaint based on the underlying facts).

The record demonstrates that UPD initiated the Adversary Proceeding by filing Plaintiff's Original Complaint on February 25, 2015.[87]  On March 4, 2015, UPD filed Plaintiff's First Amended Complaint.[88]  On March 11, 2015, the Bankruptcy Court granted the parties' Joint Motion to Reset Briefing Schedule and scheduled a hearing for April 20, 2015.[89]

---

[87]BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 1-11.

[88]Id. at 12-26.

[89]Docket Sheet, Docket Entry No. 9 in Adversary No. 15-3073, BROA in Civil Action No. H-14-2488, Docket Entry No. 2-1, pp. 3-4.

On March 27, 2015, Continental filed its Motion to Dismiss,[90] and a memorandum of law in support thereof.[91]   UPD responded on April 3, 2015, by arguing that

1. Based on the factors set forth in *Newby v. Enron Corp.*, this Court has post-confirmation jurisdiction over matters where Continental Casualty Company's predecessor materially participated in contested matters up until confirmation of UPD's plan, engaged in conduct that hinders UPD's implementation of its confirmed plan, and engaged in conduct with another creditor which is tantamount to a post-confirmation modification of the plan.

2. As to all causes of action pled in the Amended Complaint, UPD has sought relief which may be lawfully granted.[92]

In the second to last paragraph of its Response to Continental's Motion to Dismiss UPD included a perfunctory request for leave to amend, unaccompanied by either a proposed amendment or a substantive discussion of the amendment contemplated.

Plaintiffs are not entitled to replead when in response to dispositive motions they simply declare the adequacy of their

_____

[90]Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), Docket Entry No. 11 in Adversary No. 15-3073, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 75-78.

[91]Docket Entry No. 12 in Adversary No. 15-3073, BROA in Civil Action No. H-15-2488, Docket Entry No. 2-2, pp. 79-89.

[92]Response to Continental Casualty Company's Motion to Dismiss UPD Global Resources, Inc.'s First Amended Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6), Docket Entry No. 13 in Adversary No. 15-3073, BROA in Civil Action No. 15-2488, Docket Entry No. 2-2, pp. 90-140.

complaint and fail to offer a sufficient amended complaint in response to the defendants' motion. See Babb v. Dorman, 33 F.3d 472, 479 (5th Cir. 1994) (affirming district court's refusal to grant plaintiff leave to amend his complaint after it had granted defendant's motion to dismiss because plaintiff had declared the sufficiency of his pleadings and failed to offer a sufficient amended complaint in response to the defendant's motion). Moreover, since UPD has argued to this court that the claims asserted in is First Amended Complaint were adequately pled, the court's conclusions that the Bankruptcy Court correctly decided not only that it lacked post-confirmation subject matter jurisdiction over UPD's Adversary Proceeding, but also that the First Amended Complaint filed in the Adversary Proceeding failed to state a claim for which relief may be granted, persuade the court that UPD had pled its best case and that the Bankruptcy Court could perceive of no viable claim that UPD could have included in an amended complaint based on the underlying facts. See Jones, 188 F.3d at 327. See also Spiller v. City of Texas City Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (recognizing that if a complaint as amended could not withstand a motion to dismiss then leave to amend should be denied). Accordingly, the court concludes that the Bankruptcy Court did not abuse its discretion by failing to grant UPD's perfunctory request for leave to amend stated at the end of its briefing on appellees' motion to dismiss.

### IV.  Appeal from Grant of Motion to Withdraw Proof of Claim

UPD's appeal in Civil Action No. 15-2717 of the Order entered in UPD's Bankruptcy Case No. H-11-36970-H5-11 allowing Continental to withdraw the proof of claim purchased from PBC raises one issue:

> Whether the Bankruptcy Court erred in allowing Continental Casualty Company, an entity that was never a creditor, from withdrawing its newly purchased allowed claim against the estate when its stated purpose was to destroy an asset of the estate.[93]

### A.  Applicable Law

Voluntary withdrawal of a proof of claim is governed by Federal Rule of Bankruptcy Procedure 3006, which provides in relevant part:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and any creditors' committee elected pursuant to § 705(a) or appointed pursuant to § 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper. Unless the court orders otherwise, an authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan.

Motions to withdraw a claim in Bankruptcy Court are commonly analogized to motions to withdraw a complaint under Federal Rule of

---

[93]Appellant's Brief, Docket Entry No. 17 in Civil Action No. 15-2717, p. 3.

-48-

Civil Procedure 41(a).   *See In re Manchester, Inc.*, Adversary No. 08-03163-BJH, 2008 WL 5273289, *3 (Bankr. N.D. Tex. December 19, 2008) (citing *In re 20/20 Sport, Inc.*, 200 B.R. 972, 979-80 (Bankr. S.D.N.Y. 1996) (citing Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3006, which stated that Federal Rule of Civil Procedure 41(a) analysis should apply to a motion to withdraw a proof of claim)).   *See also In re Kaiser Group International, Inc.*, 272 B.R. 852, 855 (Bankr. D. Del. 2002) ("[T]he same considerations used by courts analyzing voluntary dismissal under Federal Rule 41 should be used in determining the question of withdrawal under Bankruptcy Rule 3006.").[94]   "[S]ince the general policy under Rule 41(a) is to permit withdrawal of a complaint, withdrawal of a proof of claim should be permitted unless that withdrawal results in a 'legal harm' or 'prejudice' to a non-moving party."   *In re Manchester*, 2008 WL 5273289, *3.   *See also Robles v. Atlantic Sounding Co.*, 77 F. App'x 274, 275 (5th Cir. 2003) (per curiam) (recognizing that Rule 41 motions "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit").   "The non-moving party bears the burden to prove that it will suffer such a legal harm or prejudice."   *In re Manchester*, 2008 WL 5273289, *3.   *See also In re Ogden New York Services, Inc.*, 312 B.R. 729, 733 (S.D.N.Y. 2004) (recognizing that the objecting

---

[94] *Id.* at 10 (recognizing that "[w]ithdrawal of claims under Bankruptcy Rule 3006 is similar to voluntary dismissals of civil actions under Fed. R. Civ. P. 41").

party bears the burden of demonstrating legal prejudice).  "As with
a Rule 41(a)(2) motion, a motion to withdraw a proof of claim is
left to the bankruptcy court's discretion, which is 'to be
exercised with due regard to the legitimate interests of both
[parties].'"  In re Manchester, 2008 WL 5273289, *3 (quoting in re
20/20 Sport, 200 B.R. at 979).  See LeCompte v. Mr. Chip, Inc., 528
F.2d 601, 604 (5th Cir. 1976) (dismissal should not be granted when
the result will prejudice another party).

## B.   Application of the Law to the Record

UPD argues that the Bankruptcy Court abused its discretion in
allowing Continental to withdraw the claim it acquired from PBC
because of legal prejudice.  Asserting that legal prejudice is that
which extinguishes the right of a party to bring a case,[95] and that
Continental's goal of withdrawing the claim was, in fact, to cause
extreme prejudice to UPD,[96] UPD argues that the Bankruptcy Court
abused its discretion

> [b]y allowing the Appellee to withdraw a claim it
> purchased from another creditor, [because by so doing]
> the Appellee hands a victory to its insured in a legal
> malpractice case that was one of the means of raising
> funds to pay UPD's other creditors holding approximately
> $11.6 million in allowed claims.[97]

---

[95]Appellant's Brief, Docket Entry No. 17 in Civil Action
No. 15-2717, p. 11.

[96]Id. at 13.

[97]Id. at 11.

Recognizing that it is permissible to withdraw a claim to gain a tactical advantage in litigation,[98] UPD argues that

> [t]he Appellee's act in withdrawing a claim so that its insured could obtain a summary judgment in a legal malpractice case being prosecuted as a means of effectuating a confirmed plan of reorganization is more than an [] act to obtain a tactical advantage.   In the present case, the withdrawal of the claim was a predicate to end a lawsuit which was a means of implementing a plan of reorganization.[99]

Citing In re Ogden, 312 B.R. at 732, and Zagano v. Fordham University, 900 F.2d 12, 14 (2d Cir. 1990), UPD argues that application of factors used in those cases to analyze the potential for prejudice "shows that the Bankruptcy Court abused its discretion in allowing the Appellee to withdraw its claim."[100]   The factors analyzed in Ogden and Zagano are (1) the movant's diligence in bringing the motion to dismiss or withdraw, (2) undue vexatiousness on the part of the movant, (3) the extent to which the lawsuit has progressed, including the effort and expense undertaken by the non-moving party to prepare for trial, (4) the duplicative expense of re-litigation, and (5) the adequacy of the movant's explanation for the need to withdraw the claim.   In re Odgen, 312 B.R. at 732; Zagano, 900 F.2d at 14.

Continental argues that the Bankruptcy Court's Order granting its motion to withdraw the claim it acquired from PBC should be

---

[98]Id. at 16.

[99]Id. at 17.

[100]Id. at 20.

affirmed because "UPD's appeal fails to raise a legitimate argument for reversal under the abuse of discretion standard."[101] Continental argues that the Bankruptcy Court did not abuse its discretion but, instead, "allowed Continental to withdraw the claim over UPD's objection as UPD did not meet its burden to demonstrate legal prejudice would result due to withdrawal of the claim."[102] Continental argues that it

> is the insurer for UPD's former attorneys and was providing a defense for them in the legal malpractice suit.  As part of its defense of its insureds, Continental obtained PBC's Judgment with the intention to resolve the legal malpractice suit by filing a satisfaction of judgment thereby eliminating any possibility of legal malpractice liability as there were no damages for the alleged malpractice.  In the adversary case, UPD acknowledged that Continental's actions were legal and that Continental had the right to obtain the Judgment and file the satisfaction of judgment. . . .

> . . . [T]he Judgment that was transferred from PBC to Continental formed the basis for a proof of claim filed by PBC in UPD's bankruptcy case (the "Claim"), and as part of the transaction with PBC, Continental also acquired all rights to that Claim.  Knowing that the Judgment would be eliminated and that Continental would have no right to receive a distribution in the bankruptcy case, Continental could not in good faith maintain its claim based on the Judgment and so it filed a motion to withdraw the Claim.  UPD objected to Continental's motion to withdraw the Claim and filed the adversary case seeking injunctive relief and so the motion was denied without prejudice and subject to reconsideration after resolution of UPD's adversary case against Continental. When the adversary case was dismissed by the Bankruptcy Court, Continental renewed its motion to withdraw its Claim, and after a hearing on the motion where UPD failed

---

[101]Appellee Continental Casualty Company's Brief ("Appellee's Brief"), Docket Entry No. 18 in Civil Action No. H-15-2717, p. 4.

[102]Id.

to show legal harm would result from the withdrawal of the Claim, the Bankruptcy Court granted the motion and allowed Continental's Claim to be withdrawn.[103]

In reply UPD reiterates its arguments that the Bankruptcy Court abused its discretion by failing to recognize that Continental's goal of withdrawing the claim was to cause extreme legal prejudice to the debtor's estate, and that application of the Ogden factors to the facts of this case requires this court to conclude that the Bankruptcy Court abused its discretion by granting Continental's motion to withdraw.[104] Citing Continental's admission that it obtained PBC's judgment with the intention of resolving the legal malpractice suit by filing a satisfaction of judgment thereby eliminating any possibility of liability,[105] UPD argues that "[s]uch bad faith is indicative of the Appellee's improper, vexatious purpose in seeking withdrawal of the claim."[106]

The court is not persuaded that Continental's attempt to avoid an adverse judgment against its insureds in UPD's state court malpractice case caused legal prejudice to UPD, or that even if it did, the Bankruptcy Court abused its discretion by granting Continental's motion to withdraw. See Durham v. Florida East Coast Railway Co., 385 F.2d 366, 368-69 (5th Cir. 1967) ("The crucial

---

[103]Id. at 1-2.

[104]Appellant's Reply Brief, Docket Entry No. 19 in Civil Action No. H-15-2717.

[105]Id. at 7.

[106]Id.

question to be determined is, [w]ould the defendant lose any substantial right by the dismissal. 'In exercising its discretion the court follows the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice. . . It is no bar to dismissal that plaintiff may obtain some tactical advantage thereby.'"). See also Standard National Insurance Co. v. Bayless, 272 F.2d 185, 185-86 (5th Cir. 1959) (per curiam) (holding that the district court acted well within its discretion in dismissing suit even though defendants maintained that plaintiffs' motive was to attain supposed tactical advantage in state court). This is not a situation where plaintiffs have "snatched away" UPD's sure victory in the malpractice case. See, e.g., Manshack v. Southwestern Electric Power Co., 915 F.2d 172, 174-75 (5th Cir. 1990) (entertaining possibility, in dicta, that voluntary dismissal granted after adverse trial ruling could inflict legal prejudice, but declining to find "plain legal prejudice" where voluntary dismissal would not strip the defendant of an "absolute defense").

The Fifth Circuit has recognized that legal prejudice can arise in at least two circumstances. First, prejudice can occur if dismissal — or, in this case, withdrawal — would deprive the opposing party of an otherwise-available defense. Robles, 77 F. App'x at 275. See also, e.g., Elbaor v. Tripath Imaging, Inc., 279 F.3d 314, 318-19 (5th Cir. 2002) (vacating and remanding district court's dismissal because non-movant could potentially

lose a statute of limitations defense); <u>Ikospentakis v. Thalassic</u> <u>S.S. Agency</u>, 915 F.2d 176, 178-80 (5th Cir. 1990) (vacating and remanding because non-movant could lose *forum non conveniens* defense).  Second, prejudice can occur if dismissal is sought at a late stage in the litigation after the movant has suffered an adverse legal decision.  <u>See</u> <u>Manshack</u>, 915 F.2d at 174 ("in some circumstances . . . a voluntary dismissal granted after an adverse trial court ruling could inflict 'legal prejudice' on the defendant"); <u>Davis v. Huskipower Outdoor Equipment Corp.</u>, 936 F.2d 193, 199 (5th Cir. 1991) (noting that prior to filing for voluntary dismissal, a magistrate judge made a comprehensive recommendation that was adverse to the moving party).  <u>See also</u> <u>Robles</u>, 77 F. App'x at 275 ("timing cases . . . involve situations where the movant suffered an adverse legal decision *prior* to moving for voluntary dismissal").  Neither form of legal prejudice is present in this case.  UPD has neither argued nor made any showing that withdrawal of PBC's claim would deprive UPD of any potential defenses or of the benefit of any ruling that was adverse to Continental or PBC.

Continental moved to withdraw the claim only after it filed a *Satisfaction of Judgment* in the federal district court that issued the judgment on which the claim is based.  The Satisfaction of Judgment stated that the final judgment of the District Court entered against UPD, awarding compensatory damages plus reasonable

attorneys' fees and interest, "is satisfied in full."[107]   While courts have generally held that dismissals without prejudice should be granted if no prejudicial effects would result for the opposing party, where a claimant seeks a voluntary dismissal with prejudice courts generally take a different view.   See United States of America ex rel. Terry D. McLain v. Fluor Enterprises, Inc., Civil Action No. 06-11229, 2016 WL 1031324, *3 (E.D. Louisiana March 15, 2016) (citing Schwarz v. Folloder, 767 F.2d 125, 129 (5th Cir. 1985), overruled on other grounds by Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 121 S. Ct. 1835 (2001), and Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1964) (per curiam)).   "Where . . . a plaintiff's Rule 41(a)(2) motion 'specifically request[s] dismissal with prejudice, it has been held that the district court **must** grant that request."   Id. (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2367 (3d ed. 2008) (emphasis added)).   See also Degussa Admixtures, Inc. v. Burnett, 471 F. Supp. 2d 848, 851 (W.D. Mich. 2007) ("It generally is considered an abuse of discretion for a court to deny a plaintiff's request for voluntary dismissal with prejudice.").

The fact that Continental sought withdrawal only after it filed a Satisfaction of Judgment in the federal district court case

---

[107]Satisfaction of Judgment, BROA in Civil Action No. H-15-2717, Docket Entry No. 15-3, p. 29.

that resulted in the judgment underlying the claim eliminated or
significantly reduced any prejudice or injustice to UPD.  See
Schwarz, 767 F.2d at 129 ("[N]o matter when a dismissal with
prejudice is granted, it does not harm the defendant.").  UPD cites
no case in which a court has refused to grant a motion to withdraw
a claim at the claim-holder's request following the filing of a
Satisfaction of Judgment.  Moreover, UPD did not merely fail to
demonstrate to the Bankruptcy Court that it would suffer legal
prejudice if Continental's motion to withdraw was granted, UPD
acknowledged as much in the brief that it filed with the Bankruptcy
Court by stating:

> If Continental's insured obtains a summary judgment on
> the basis that Continental is allowed to withdraw the
> claim it now owns in this case, such an act will not harm
> UPD per se.  Rather, it will slam the door on creditors
> such as Wells Fargo Bank and the Port of Houston.[108]

Missing from UPD's briefing before either the Bankruptcy Court or
this court is any showing that withdrawal of the claim at issue
would cause harm or legal prejudice to UPD.[109]  Also missing from
UPD's briefing is any showing or citation to authority from which

---

[108]Debtor's Response to Motion of Continental Casualty Company
to Reconsider/Renew Pursuant to Bankruptcy Rule 3006 Motion to
Withdraw Claim, BROA in Civil Action No. H-15-2717, Docket Entry
No. 15-3, p. 4.

[109]See also Transcript of Hearing held April 20, 2015,
p. 17:19-22, BROA in Civil Action No. H-15-2488, Docket Entry
No. 2-2, p. 200 (UPD's counsel states: "And I want to emphasize
it's not the assignment of the claim; it's not the withdrawal of
the claim that's at issue here.  It is the release of the judgment
in the U.S. District Court.").

either the Bankruptcy Court or this court could conclude that withdrawal of the claim would harm any of UPD's other creditors. Because Continental's motion to withdraw the Claim acquired from PBC was based on the Satisfaction of Judgment filed in the district court, Continental's motion effectively asked the Bankruptcy Court to grant the withdrawal with prejudice. Under these circumstances the Bankruptcy Court did not abuse its discretion by allowing Continental to withdraw the claim purchased from PBC. UPD's contention that Continental's actions destroyed an asset of UPD's bankrutpcy estate has no merit. The Satisfaction of Judgment that Continental filed in the district court eliminated a $5,670,534.77 claim against UPD's estate. UPD neither argues nor presents any evidence capable of establishing that a favorable verdict in the state court malpractice suit could have provided equal or greater value to the estate. See Schwarz, 767 F.2d at 130 (ruling that dismissal with prejudice was not prejudicial to defendant because it barred further adjudication). The court concludes therefore that the Bankruptcy Court did not abuse its discretion by granting Continental's motion to withdraw, and that the Bankruptcy Court's September 17, 2015, Order granting Continental's motion to withdraw should be affirmed.

## V.  Conclusions and Order

For the reasons stated in § III, above, the Bankruptcy Court's Order granting Defendant's Motion to Dismiss, signed May 12, 2015 (Docket Entry No. 27 in Adversary Proceeding H-15-03073), is

**AFFIRMED**; and the Bankruptcy Court's Order on Motion for Clarification of the Order Granting Continental Casualty Company's Motion to Dismiss, signed August 13, 2015 (Docket Entry No. 35 in Adversary Proceeding H-15-03073), is **AFFIRMED**.

For the reasons stated in § IV, above, the Bankruptcy Court's Order granting Motion of Continental Casualty Company pursuant to Bankruptcy Rule 3006 to withdraw Claim No. 3, signed on September 17, 2015 (Docket Entry No. 141 in Bankruptcy Case No. 11-36970-H5-11), is **AFFIRMED**.

**SIGNED** at Houston, Texas, on this the 21st day of July, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE